**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MINDY CASWELL,** | : | **CIVIL NO. 1:17-CV-704** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **NANCY BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

I.      **Introduction**

In 2013 Mindy Caswell applied for Social Security disability benefits,
alleging that she had become disabled due to an array of medical impairments
including spinal conditions, fibromyalgia, and carpal tunnel syndrome. In
Caswell's case, the ALJ summarily discounted her fibromyalgia diagnosis at Step
2 of the five-step analysis prescribed for Social Security appeals, finding that
Caswell's fibromyalgia was not a "severe" impairment. The ALJ reached this
conclusion even though the treating source who diagnosed Caswell as suffering
from fibromyalgia had opined that she was totally disabled due to her spinal
disorders and this condition. Further, having discounted this diagnosis of
fibromyalgia at Step 2 of its analysis, it is unclear whether, and to what extent, the

ALJ evaluated the degree of impairment experienced by Caswell due to fibromyalgia at any subsequent stages of the disability analysis in this case. Moreover, in addition to discounting the severity of Caswell's fibromyalgia at Step 2, the ALJ's decision made no reference whatsoever to a separate diagnosis that Caswell suffered from carpal tunnel syndrome as part of its Step 2 analysis, or at any point in the decision denying Caswell's application for disability benefits.

In our view, the ALJ's Step 2 assessment of these two diagnosed conditions, which entirely failed to mention one condition, carpal tunnel syndrome, and neglected to rate a second condition, fibromyalgia, as severe was particularly problematic since: "It is well-settled that this step two medically determinable-severity inquiry is a '*de minimus* screening device to dispose of groundless claims.' *McCrea v. Comm. of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004); *Newell v. Comm. of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Accordingly, '[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant' *id.*" *Velazquez v. Berryhill*, No. 3:17-CV-317, 2017 WL 5560426, at *5 (M.D. Pa. Nov. 2, 2017), *report and recommendation adopted sub nom. Pagan v. Berryhill*, No. 3:17CV0317, 2017 WL 5559914 (M.D. Pa. Nov. 17, 2017). For the reasons set forth below, in this case, we find that the failure to adequately or accurately address these conditions at Step 2, coupled with the uncertainty concerning the degree to which these impairments were then considered at subsequent stages of

the disability assessment process, leads us to conclude that this case should be remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion.

## II. <u>Statement of Facts</u>

On April 30, 2013, Mindy Caswell applied for disability insurance benefits under Title II of the Social Security Act, alleging an onset of disability beginning on February 7, 2009. (Tr. 20.) Caswell's disability application described impairments which she alleged limited her ability to stand, walk, sit, lift, carry, and use her arms and legs to manipulate items. Caswell attributed these allegedly disabling limitations to a number of medical conditions, including spinal disorders, fibromyalgia, and bilateral carpal tunnel syndrome. (*Id.*)

Clinical and diagnostic evidence confirmed that Caswell suffered from these medical conditions. With respect to Caswell's spinal conditions and fibromyalgia, this medical evidence and diagnoses were longstanding and were verified by several medical sources. (Tr. 392, 491, 577, 597, 624, 628, 647, (fibromyalgia) 331, 337, 395, 467, 495 (arthritis), 650, 659 (cervical spondylosis)). As for Caswell's bilateral carpal tunnel syndrome, the initial clinical notation describing this diagnosis is found in a February 2016 treatment record, but that notation described this ailment as a pre-existing condition, since it indicated that Caswell

was "diagnosed with CTS" and indicated that she had at some previous time "gotten splints which provide some relief." (Tr. 647.)

The medical records in this case also disclosed that Caswell's primary treating source, Dr. Dana, regarded the combination of these condition to be: (1) medically determinable; (2) severe; and (3) disabling. In particular, on October 21, 2014 and June 22, 2015, Dr. Dana submitted medical reports which opined that Caswell could only sit for 2 hours per day, stand for 1 hour per day, and walk for 30 minutes per day. According to Dr. Dana, Caswell could only sit for 30 minutes at a time without interruption and could only stand or walk for 20 minutes at a time without interruption. Dr. Dana also limited Caswell to only occasional reaching, handling, fingering, feeling, pushing, and pulling; occasional use of the right foot to operate foot controls and found that she could never use the left foot to operate foot controls. Dr. Dana further opined that Caswell could only occasionally climb stairs and ramps, climb ladders or scaffolds, and balance and should never stoop, kneel, crouch, or crawl. Dr. Dana also enjoined Caswell to refrain from exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, pulmonary irritants, extreme cold, extreme heat, and vibrations. (Tr. 480-5, 564-70.)

These treating source opinions were disputed by a non-examining, non-treating source, Dr. Steven Goldstein. Based solely upon his review of medical

records, in May of 2016 at the request of the ALJ Dr. Goldstein provided a medical assessment of Caswell. In that evaluation, the only impairments identified by Dr. Goldstein were cervical spondylosis and degenerative disc disease, obesity, and osteoarthritis. Dr. Goldstein's medical opinion therefore did not identify, consider or address Caswell's fibromyalgia or carpal tunnel syndrome, both of which had been diagnosed by other medical sources at the time that Dr. Goldstein issued his opinion. With his assessment limited in this fashion, Dr. Goldstein arrived at very different conclusions regarding Caswell's medical condition and impairments. Thus the doctor found that Caswell could sit, stand, and walk up to 6 hours per day; and was limited to only occasional overhead reaching with either hand, but retained the ability to frequently reach, handle, finger, feel, push and pull. Dr. Goldstein also stated, that based on his review of the record and experience, there was not "sufficient credible clinical or radiographic evidence to support the nature and the extent of the limitations" assessed by Caswell's treating providers. (Tr. 636-45.)

It was against this medical and factual backdrop, which documented that Caswell suffered from two medically determinable and potentially severe ailments, fibromyalgia and carpal tunnel syndrome, that the ALJ conducted a hearing into Caswell's disability application on April 27, 2016. (Tr. 33-54.) Caswell testified at

this hearing, describing her medical conditions and impairments. (*Id*.) No other witnesses were heard by the ALJ at this proceeding.

On August 12, 2016 the ALJ issued a decision denying Caswell's claim for disability benefits. (Tr. 17-27.) In this decision, the ALJ first found at Step 1 of the five-step sequential process that applies to disability claims that Caswell met the insured status requirement of the Social Security Act through September 30, 2014. (Tr. 22.) At Step 2, the ALJ concluded that Caswell's severe impairments were limited to degenerative disc disease and osteoarthritis. (*Id*.) Despite Caswell's long-standing diagnosis of fibromyalgia, the ALJ dismissed this medical concern in a summary manner as less than severe, alleging without further discussion that this condition and all of Caswell's remaining medical impairments did not impose more than minimal limitations on her ability to perform basic work activities for a continuous period of at least 12 months. (Tr. 22-3.) In the absence of any further discussion or analysis it is not possible to determine how the ALJ reached this conclusion. Further, the ALJ's decision made no mention whatsoever of Caswell's bilateral carpal tunnel syndrome at Step 2 of this analysis. Thus, we are unable to ascertain whether the ALJ recognized that Caswell suffered from this medical condition, evaluated whether the condition was medically determinable, or weighed its severity.

The ALJ's subsequent analysis of Caswell's claim did not cure or clarify this uncertainty created by this truncated Step 2 assessment. At Step 3, the ALJ found that none of the identified severe impairments met a listing which would define her as *per se* disabled. (Tr. 23.) This analysis made no mention of Caswell's fibromyalgia or carpal tunnel syndrome. The ALJ then determined that Caswell retained the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 CFR 404.1567(b), (*Id.*) The ALJ further concluded at Step 4 of this analytical process that Caswell could not return to her past work, but found at Step 5 that she could perform other work in the regional and national economy. (Tr. 26-7.) The ALJ therefore determined that Caswell was not disabled and denied this application for disability benefits. (*Id.*)

In reaching these conclusions, the ALJ did not clarify or correct the very limited treatment afforded to Caswell's diagnosed fibromyalgia and carpal tunnel syndrome at Step 2 of this sequential analysis. Thus, neither of these conditions was addressed or discussed in the ALJ's subsequent evaluation of this disability claim. Furthermore, in rejecting this claim, the ALJ relied heavily upon the opinion of the non-treating, non-examining medical source, Dr. Goldstein, who also failed to acknowledge either of these diagnosed medical conditions. Moreover, the decision's analysis of the medical evidence emphasized the lack of clinical and neurological findings, a form of analysis which courts have found to be

inappropriate in cases involving fibromyalgia, since fibromyalgia is a medical condition which afflicts sufferers but leaves few clinical signs.   (Tr. 23-6.)

This appeal followed. (Doc. 1.) On appeal, Caswell argues, *inter alia*, that the ALJ erred in summarily discounting her fibromyalgia and completely failing to address her carpal tunnel syndrome at Step 2 of this disability analysis, and then failing to incorporate these conditions into any RFC and Step 5 assessment of this disability claim. This case is now fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we find that the ALJ's decision does not adequately address these conditions at Step 2 or sufficiently consider these ailments in crafting Caswell's RFC and making a Step 5 determination that she was not disabled. Therefore, this case will be remanded to the Commissioner for further proceedings.

## III.   Discussion

### A.      Evaluation of Social Security Disability Claims

Resolution of the instant Social Security appeal involves an informed consideration of the respective roles of two adjudicators—the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an inability to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). Furthermore,

> [a]n individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for his [or her], or whether he [or she] would be hired if he [or she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). Finally, to qualify for benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the insurance program and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If

the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). As part of this analysis the ALJ must first determine whether the claimant was engaged in substantial gainful activity and met the insured requirements of the Act.

The second step in this analysis involves a determination concerning whether the claimant has any medically determinable and severe impairments. On this score:

> It is well-settled that this step two medically determinable-severity inquiry is a "*de minimus* screening device to dispose of groundless claims." *McCrea v. Comm. of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004); *Newell v. Comm. of Soc. Sec.,* 347 F.3d 541, 546 (3d Cir. 2003). Accordingly, "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," *id.*; the claimant's burden at step two is "not an exacting one," *id.*; and this step should be "rarely utilized" to deny benefits. *Id.* at 361. Further, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *Id.* at 360. As part of this "close scrutiny" it is clear that we cannot sustain a step two benefit denial decision, which rests upon an ALJ's refusal to attach any significant weight to a physician's opinion. *See Magwood v. Comm'r of Soc. Sec.,* 417 Fed.Appx. 130, 132 (3d Cir. 2008) (citing *McCrea v. Comm. of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004)). Similarly, at this initial stage in the disability benefit review process, an ALJ errs if the ALJ makes an adverse step two determination, but fails to address some material evidence in the record which supports that disability claim. *See Kinney v. Comm'r of Soc. Sec.*, 244 Fed.Appx. 467, 470 (3d Cir. 2007).

> *Velazquez v. Berryhill*, No. 3:17-CV-317, 2017 WL 5560426, at *5 (M.D. Pa. Nov. 2, 2017), *report and recommendation adopted sub*

*nom. Pagan v. Berryhill,* No. 3:17CV0317, 2017 WL 5559914 (M.D. Pa. Nov. 17, 2017).

Once the ALJ has made this threshold determination concerning whether a claimant suffers from impairments which are medically determinable and severe, the ALJ must assess in turn: (1) whether the claimant's impairments meet or equal a listed impairment; (2) whether the claimant's impairments prevent the claimant from doing past relevant work; and (3) whether the claimant's impairments prevent the claimant from doing any other work. *Id.*

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); *Mason,* 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic procedural and substantive requirements. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under

the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he [or she] has rejected and which he [or she] is relying on as the basis for his [or her] finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

### B. <u>Judicial Review of ALJ Determinations – Standard of Review</u>

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) or 42 U.S.C. §1383(c)(3) to review the decision of the Commissioner of Social Security denying a claim for disability benefits, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine

whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981); *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this Court, therefore, is not whether the plaintiff is disabled, but whether the Commissioner's finding that she was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 U.S. Dist. LEXIS 31292, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues . . . .").

However, implicit in this standard of review is the concept that the ALJ must adequately explain the decision denying benefits to a claimant. Thus, "[t]he ALJ must indicate in his decision which evidence he [or she] has rejected and which he [or she] is relying on as the basis for his [or her] finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Further, "[w]here a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d

310, 317 (3d Cir. 2000). If a decision does not meet these benchmarks of analysis and articulation, a remand is necessary in order to ensure that there exists an informed basis for judicial review of the agency's actions.

> **C.** **This Case Should Be Remanded for a Further Assessment of the Medical Evidence at Steps 2 and 5.**

In our view, a remand of this case is necessary in light of the ALJ's failure to adequately identify, address and assess all of Caswell's medical conditions at Step 2 of the sequential analysis called for in this case. We further find that these Step 2 errors cannot be deemed harmless in this context, since we are unable to ascertain whether the ALJ's formulation of Caswell's residual functional capacity, and the ALJ's Step 5 determination that Caswell was not disabled, adequately considered all of her medically determinable and severe impairments.

As we have noted: "this step two medically determinable-severity inquiry is a '*de minimus* screening device to dispose of groundless claims.' *McCrea v. Comm. of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004); *Newell v. Comm. of Soc. Sec.,* 347 F.3d 541, 546 (3d Cir. 2003). Accordingly, '[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant,' *id.*; the claimant's burden at step two is 'not an exacting one,' *id.*; and this step should be 'rarely utilized' to deny benefits. *Id.* at 361." *Velazquez v. Berryhill*, No. 3:17-CV-317, 2017 WL 5560426, at *5 (M.D. Pa. Nov. 2, 2017), *report and recommendation adopted sub*

*nom. Pagan v. Berryhill,* No. 3:17CV0317, 2017 WL 5559914 (M.D. Pa. Nov. 17, 2017)

Further, when evaluating alleged Step 2 errors, we are cautioned that prejudicial, adverse Step 2 decisions "should be reviewed with close scrutiny." *McCrea v. Comm. of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004). This close scrutiny is particularly appropriate whenever an ALJ makes a Step 2 determination which fails to attach any significant weight to a physician's opinion concerning whether a condition is medically determinable or severe. *See Magwood v. Comm'r of Soc. Sec.,* 417 Fed.Appx. 130, 132 (3d Cir. 2008) (citing *McCrea v. Comm. of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004)).

In this case, we conclude that treating medical sources had found by August of 2016 that Caswell's fibromyalgia and carpal tunnel syndrome were both medically determinable conditions. In fact, Caswell's fibromyalgia diagnosis was a longstanding diagnosis for the plaintiff which was expressly acknowledged by the Commissioner at the outset of consideration of this claim. Further, while the medical records relating to Caswell's carpal tunnel syndrome were sparser, by the time of the ALJ's decision in August of 2016 Caswell had clearly been diagnosed with this condition as well. In addition, Dr. Dana's treating source medical opinions, which were based upon his diagnosis that Caswell suffered from fibromyalgia and other ailments, plainly identified these medical concerns as both

severe and disabling. Thus, in Caswell's case there was significant, material evidence which indicated both that she suffered from two medically determinable conditions, carpal tunnel syndrome and fibromyalgia. Furthermore, Caswell's treating source, Dr. Dana, apparently deemed these conditions to be both severe and disabling when considered in combination with her other ailments.

Given this evidence, recognizing the *"de minimus"* nature of the claimant's burden at Step 2, and acknowledging that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," and the claimant's burden at step two is "not an exacting one," *McCrea v. Comm. of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir.2004), in light of this proof we believe that the ALJ erred in Caswell's case at Step 2 in two critical respects. First, in not considering Caswell's fibromyalgia to be severe at Step 2, or alluding to this diagnosis in the body of the ALJ's decision, the ALJ did not provide us with a sufficient articulated rationale for this decision to allow us to conduct any informed evaluation of the degree to which this medically determinable, and potentially disabling, disease was assessed in making this disability determination. Simply put, we cannot determine the extent to which the ALJ considered and weighed this potentially serious condition in making the determination that Caswell was not disabled.

In addition to the inadequate evaluation of Caswell's fibromyalgia, the ALJ's decision neglected to make any mention of Caswell's carpal tunnel syndrome, or

address in any way its potential relevance to this disability determination. While the Commissioner speculates that there are sound reasons for the ALJ's failure to mention this particular ailment in its decision, the decision's complete silence on this score frustrates any effort to review this aspect of the decision in a meaningful way. Simply put: "[i]n the absence of such an [explanation] the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 121 (3d Cir. 2000)

While we recognize that Step 2 errors may be deemed harmless if all of the claimant's medical conditions are fully considered at subsequent steps in the analytical process, we cannot conclude that these particular Step 2 errors were harmless. Quite the contrary, the evidence suggests that prejudice may have flowed from these Step 2 errors. In particular, we note that the ALJ's decision did not clarify or correct any of these Step 2 oversights. Rather, the ALJ's subsequent analysis may have compounded those errors in several respects since neither of these conditions was discussed in the ALJ's subsequent evaluation of this disability claim. Furthermore, in rejecting this claim, the ALJ relied heavily upon the opinion of the non-treating, non-examining medical source, Dr. Goldstein, who also failed to acknowledge either of these diagnosed medical conditions.

Moreover, the decision's subsequent analysis of the medical evidence not only failed to acknowledge these medical conditions; it also emphasized the lack of

clinical and neurological findings when rejecting Caswell's disability claim. This form of analysis is inappropriate in a case such as this which involves a diagnosis of fibromyalgia, since fibromyalgia is a medical condition which afflicts sufferers but leaves few clinical signs. Indeed, we have held that it is often error for an ALJ to reject a treating source opinion in a fibromyalgia claim based simply upon the ALJ's perception that there is a lack of other objective evidence to support this diagnosis. *See Foley v. Barnhart*, 432 F. Supp. 2d 465, 475 (M.D. Pa. 2005). As we have noted on this score: "in a disability determination involving fibromyalgia, it is error to require objective findings when the disease itself eludes such measurement. *See, e.g., Green–Younger,* 335 F.3d at 108. Similarly, unverified subjective complaints consistent with the disease cannot be discredited for lack of objective evidence. *Id.* Rather, a doctor's diagnosis of fibromyalgia bolsters the credibility of the plaintiff's complaints." *Foley v. Barnhart*, 432 F. Supp. 2d 465, 480 (M.D. Pa. 2005). Therefore, the ALJ's hasty decision to discount Caswell's fibromyalgia at the outset of this merits analysis may have led the ALJ to rely upon evidence which lacks probative value with respect to fibromyalgia claims to reject this claim, which entailed alleged disability based in part upon a diagnosis of fibromyalgia.

In sum, we find that the ALJ's analysis of this case fails on several scores. First, the ALJ erred in failing to acknowledge Caswell's carpal tunnel syndrome

and in failing to recognize the potential severity of Caswell's fibromyalgia at Step 2 of this analysis. Second, once the ALJ made these Step 2 errors, the failure to further address these conditions in any meaningful way undermined confidence in the subsequent analysis of this claim. Third, by relying upon an expert opinion which also failed to acknowledge these diagnosed conditions to deny Caswell's claim the ALJ's opinion inadvertently compounded the prejudice caused by this Step 2 error. Finally, the ALJ's subsequent analysis of Caswell's claim, which focused upon the lack of objective medical findings, highlighted the potential prejudice which may have flowed from prematurely discounting her diagnosis of fibromyalgia at Step 2, since fibromyalgia is a condition which by its very nature impairs without leaving objective evidence to evaluate.

Given these analytical shortcomings, in our view more is needed here to sustain this decision, even under the deferential standard of review that applies to Social Security disability appeals. Therefore, we will direct that this case be remanded for further development, and consideration of the medical evidence. Because we find a basis for remand based upon these grounds, we need not address Caswell's remaining claims of error. To the extent that any other error may have occurred, it may be remedied on remand. Finally, while we have found that a remand is necessary here to further consider and develop the medical evidence, nothing in this Report and Recommendation should be deemed as expressing a

judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.    Conclusion

Accordingly, for the forgoing reasons Caswell's request for a new administrative hearing is GRANTED, final judgment is entered in favor of Caswell, the decision of the Commissioner denying this claim is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

So ordered this 17th day of May, 2018.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge